Filed 5/16/22  P. v. Diaz CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078649 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF003287) |
| JOAQUIN ALVARADO DIAZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Julie L. Garland Assistant Attorneys General, Eric A. Swenson and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

Joaquin Alvarado Diaz was charged with eight counts of felony sexual abuse: unlawful sexual intercourse/sodomy (Pen. Code,[1] § 288.7, subd. (a);

---

[1]    Undesignated statutory references are to the Penal Code.

counts 1, 4, 6); oral copulation/sexual penetration (§ 288.7, subd. (b); counts 2, 5, 7); forcible lewd act upon a child (§ 288, subd. (b)(l); count 3); and lewd act upon a child (§ 288, subd. (a); count 8). Diaz pleaded no contest to one count of committing a lewd act upon a child under 14 years of age (§ 288, subd. (a)), and the remaining counts were dismissed. His plea included a *Harvey* waiver.[2] The court suspended imposition of sentence and placed Diaz on three years' formal probation subject to various terms and conditions, including that he serve one year in county jail.

The court awarded the minor restitution in the amount of $665,000 as follows: $300,000 for past noneconomic damages for psychological harm due to Diaz's criminal conduct ($50,000 per year for the six years of abuse she suffered from January 2014 to March 2020), plus $365,000 ($50 per day for 20 years) for future noneconomic damages. The court found the minor had an approximate life expectancy of 78 years, and would potentially "continue to suffer serious psychological harm for the rest of her life, but will certainly suffer the serious traumatic effects of defendant's criminal conduct for at least 20 years in the future."

Diaz contends the trial court abused its discretion in awarding the minor $365,000 in future noneconomic damages. He further contends no objective evidence supported either the nature of the future emotional distress damages or the 20-year period upon which the court based it;

---

[2]    The waiver under *People v. Harvey* (1979) 25 Cal.3d 754 in the plea form that Diaz initialed states: "The sentencing judge may consider my prior criminal history and the entire factual background of the case, including any unfiled, dismissed or stricken charges or allegations or cases when granting probation, ordering restitution or imposing sentence."

2

therefore, this court cannot meaningfully review the restitution award. We affirm the order.

## PROCEDURAL AND FACTUAL BACKGROUND

A probation report stated that Diaz began sexually abusing the minor when she was four years old. Her mother learned Diaz had touched the minor inappropriately when the minor was 10 years old. The mother contacted police, and the minor reported that Diaz raped, sodomized, and fondled her on average once a week during those six years.

In a written statement attached to the probation report, the mother explained that the minor experienced "severe mental health and emotional issues" because of Diaz's actions. Further, the minor had difficulty taking showers and sleeping at night and had "flashbacks." The mother explained that the minor, who had poor self-esteem due to the trauma Diaz had caused, would "continue to live with [the trauma] for the rest of her life." Her mother said the minor was taking "medicine to try to cope," and was receiving help from her doctors.

During the sentencing hearing, the court tentatively found that the minor was entitled to $250,000 in noneconomic damages plus the cost of therapy, medication, or related expenses. However, the court reserved its ruling on the final amount pending a formal restitution hearing. Diaz initially filed a motion stipulating to the court's award of $250,000 in restitution for noneconomic damages.

At the first restitution hearing, the mother testified regarding the minor's damages:

"The Court: So does [the minor] suffer psychological harm on a daily basis because of the defendant's conduct?

3

"[Mother]: Yes. She's been on suicide watch a couple of times by a psychologist, but it really affected her.

"The Court: So she's receiving professional treatment for her psychological harm; is that correct?

"[Mother]: Yeah. She's on medication and everything, but it's still a lot even with medication."

The mother testified at a second restitution hearing that the minor had made several suicide attempts, was unable to sleep at night, could not shower by herself, suffered flashbacks, experienced difficulty adapting to new situations, and was scared to be outside of the home or away from her mother. The mother testified that although the minor was in therapy four times per week, it was "still not enough" and she did not believe it would ever be enough. She testified that her daughter "can't live a normal life like a normal child is meant to live, a normal childhood." The mother explained that her daughter's condition had worsened from the time she reported Diaz's conduct to police. Since Diaz began abusing her, the minor lost her friends, had difficulty talking with strangers, and developed learning problems in school. The mother reported no economic damages.

Defense counsel at the second restitution hearing relied on *People v. Valenti* (2016) 243 Cal.App.4th 1140 (*Valenti*) and *People v. Giordano* (2007) 42 Cal.4th 644 (*Giordano*) and argued the court should defer its ruling pending further documentation from mother, as it had no rational basis for a damages award, because no documentation or independent evaluation supported either economic or noneconomic damages.

The court countered that the probation report and the mother's written statement and testimony supported a restitution award: "What I've heard so far is that the victim in this case [ ] has suffered serious emotional distress

4

and the defendant's conduct was a substantial factor, if not the only factor, in causing that serious emotional distress. And what I mean by 'serious emotional distress,' I'm talking about the suffering, anguish, fright, horror, grief, anxiety, worry, shock, humiliation. There's clearly quite a bit of that."

The court at two separate restitution hearings asked Diaz's counsel if he had affirmative evidence to present regarding noneconomic damages, and each time counsel replied in the negative and submitted on the record presented.

The court in its ruling made a factual finding regarding Diaz's abuse of the minor: "According to the information provided in the probation report from a forensic interview with [the] victim, [she] was subjected to acts of forced sexual intercourse, sodomy and oral copulation over a period of 5 [to] 6 years. The defendant would put his penis in her vagina and buttocks, which would physically hurt the victim. While in a bed, the defendant would touch her, he then would make her turn around and he would put his penis inside her vagina and defendant would leave it there and move it around. Victim [ ] reported that the defendant would take it back and put it back in. The victim reported that what the defendant would do to her vaginal area was the same that he would do to her buttocks area. The defendant's hands at the moment the victim was being violated would touch her chest and her vagina. The victim also reported that the defendant would force her to put his penis in her mouth and he would tell the victim to lick it. The victim reported that the defendant forced her not to say anything or else her mother would hit her and he would tell her mother that the victim had touched him. Victim [ ] reported the defendant would have intercourse and anal sex about once per week . . . . . . . The victim told the forensic interviewer that the defendant would put his hand over her mouth if the victim would start to scream. The victim reported

that at times, she would try to get away but the defendant would hold her arms down. . . . The defendant took pictures of her with his phone. The defendant would also ask the victim to take pictures of herself and her buttocks area with his phone. The victim also reported that the defendant showed her videos and pictures of people 'doing that', meaning engaging in sexual intercourse, oral sex and anal sex. The victim reported that it was children in the videos and the defendant would ask her, 'Why don't you do it like them?' "

Finding that the minor suffered severe psychological trauma during the six years Diaz abused her, the court awarded her noneconomic damages of $665,000. It relied on the legal framework for restitution awards set forth in article I, section 28, subdivision (b)(13)(A)-(C) of the California Constitution, Penal Code section 1202.4, subdivision (f)(3)(F) mandating that those convicted of committing lewd acts upon a minor pay restitution, and CACI No. 3905A.[3]

## DISCUSSION

### I. *Applicable Law*

The California Constitution gives trial courts broad power to impose restitution on offenders. (Cal. Const., art. I, § 28, subd. (b)(13).) "[A]ll persons who suffer losses" due to crime have the right to restitution. (*Ibid.*) Accordingly, courts have held restitution statutes should be interpreted

---

[3] CACI No. 3905A provides in part: "No fixed standard exists for deciding the amount of these noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense. [To recover for future [*insert item of pain and suffering*], [*name of plaintiff*] must prove that [he/she/*nonbinary pronoun*] is reasonably certain to suffer that harm."

6

broadly and liberally. (*In re S.E.* (2020) 46 Cal.App.5th 795, 808; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132; accord, *People v. Mearns* (2002) 97 Cal.App.4th 493, 500 ["A victim's restitution right is to be broadly and liberally construed"]; *People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525 ["statutory provisions implementing the constitutional directive have been broadly and liberally construed"].) "[A]ny interpretation that limits a victim's right to restitution would be contrary to the expressed intent and purpose of article I, section 28 of the California Constitution." (*In re S.E.*, at p. 808.)

Generally, victim restitution is limited to "economic loss," but there is an exception for restitution orders "relating to felony convictions for lewd or lascivious acts." (See *Giordano, supra,* 42 Cal.4th at p. 656; § 1202.4, subds. (a), (f).) For such convictions, the restitution order may provide for noneconomic damages, including, but not limited to, psychological harm. (§ 1202.4, subd. (f)(3)(F); *Giordano*, at p. 656.) Specifically, with exceptions not applicable here, section 1202.4, subdivision (f) provides: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . . [¶] . . . [¶] (3) To the extent possible, the restitution order shall be . . . of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7."

Section 1202.4, subdivision (k) defines the term "victim" as "[t]he immediate surviving family of the actual victim," and a person who has

7

sustained economic loss as the result of a crime who "at the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim." (§ 1202.4, subds. (k)(1), (3)(A).) The statute makes no distinction between a " 'derivative victim' " and an " 'actual victim.' " (*Giordano, supra*, 42 Cal.4th at p. 656.)

We review the amount ordered for restitution using the abuse of discretion standard. (*Giordano, supra*, 42 Cal.4th at p. 663.) We ask whether the ruling " ' "falls outside the bounds of reason" under the applicable law and the relevant facts.' " (*Ibid.*)

Noneconomic damages are " 'subjective, non-monetary losses including, but not limited to, pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation.' " (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).) "Unlike restitution for economic loss, . . . loss for noneconomic [harm] is subjectively quantified." (*Id.* at p. 436.) In light of the difference between the two types of loss, the court in *Smith* held a different standard of review must be applied to orders of noneconomic restitution to allow for the subjective considerations of the trial court judge. (*Ibid.*) The court concluded, "We are guided in this matter by the civil jury instruction concerning noneconomic loss: 'No fixed standard exists for deciding the amount of these damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.' " (*Ibid.*) " 'As a result, all presumptions are in favor of the decision of the trial court.' " (*Ibid.*) "We therefore affirm a restitution order for noneconomic damages that does not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Ibid.*)

8

## II. *Analysis*

Diaz argues that no expert testimony was presented related to any specific harm the minor "is likely to experience in a year or five years, much less what she is likely to experience two decades from now. The only evidence that bore on this question, in fact, was the fact that [the minor] had been in therapy for eight months . . . [and her mother's] description of what [the minor] had experienced prior to the hearing, and [her] claim that [the minor] 'will continue to live with [those issues] for the rest of her life' and would not 'ever understand why [the abuse] occurred.' " Diaz further argues that mother's testimony was much like the evidence in *Valenti*, where the court concluded the theories about future trauma were an opinion "filtered through [the] parents" and unsupported by any information such as "victim declarations, independent documentation, or professional evaluations" that would permit the court to make a factually grounded evaluation of the victim's future prospects. (*Valenti, supra,* 243 Cal.App.4th at p. 1182.)

We conclude the superior court's reliance on mother's testimony does not undermine the validity of the restitution award. While restitution orders must be supported by substantial evidence, there is no requirement that the evidence provided be from a particular source. "Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report[.]" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542-1543.) The trial court applies a standard of proof of preponderance of the evidence, not proof beyond a reasonable doubt. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.)

Here, the court stated it was "in the difficult and unenviable position of quantifying [the victim's] psychological harm and the loss of her normal childhood in dollars," and set forth its calculation of restitution for past

psychological harm for noneconomic damages based upon the sum of $50,000 per year for the six years of abuse she suffered, for a total of $300,000. The court calculated the future psychological harm award as $50 per day for a 20-year period, a total of $365,000. We conclude the restitution award did not fall outside the bounds of reason; rather, the court provided a rational basis for its decision. (*Giordano, supra,* 42 cal.4th at pp. 663-664.) We point out that the court here made a similar calculation as that which the court affirmed in *Smith, supra,* 198 Cal.App.4th at p. 437: "In determining how to fix an amount of noneconomic damages, the trial court expressed its willingness to base the award on 15 years of abuse by defendant. Multiplying that 15 years by $50,000, the court arrived at the figure requested by Doe— $750,000 for noneconomic damages." (*Ibid.*)

*Valenti, supra,* 243 Cal.App.4th at p. 1140, does not persuade us that the court's award of noneconomic restitution was an abuse of discretion. In *Valenti*, the appellate court reversed awards of $50,000 in noneconomic damages to each of three victims. (*Id.* at p. 1182.) The court noted the record contained "no victim declarations, independent documentation, or professional evaluations" in support of the court's award of $50,000 of noneconomic damages. (*Ibid.*) There, the People's sentencing memorandum cited to *Smith, supra,* 198 Cal.App.4th 415 and listed the requested sums but the People "did not submit any support for the figures." (*Valenti,* at p. 1182.) The only information about the victims was "filtered through their parents and conveyed in the probation report or in a statement at sentencing" and did not support the court's award. (*Ibid.*) The mother of one victim reported to probation the victim " 'did not sustain actual child abuse' " and "had not expressed his true feelings or discussed them with his mother." (*Ibid.*) The mother of a second victim reported the victim was " 'doing fine' " and the

10

mother had " 'not noticed any emotional scars.' " (*Ibid.*)  At the sentencing hearing, the third victim's mother reported the victim was " 'excellent.' " (*Id.* at p. 1183.)  Based on the record in that case, the appellate court concluded "the court's only apparent basis for awarding $50,000 [to each of the three victims] was the [*Smith* opinion]." (*Ibid.*)  The appellate court concluded the trial court "did not find facts, cite reliable evidence, or even explain how it arrived at the amount of restitution awarded to each victim.  There was no evidence, either through direct testimony or victim-impact statements, that the children suffered nightmares or flashbacks, that they were having trouble in school or problems making friends, that they had considered harming themselves or others, or that they had sought or received counseling in any form." (*Ibid.*)  Rather, the "three families were relieved that their sons had not 'actually' been abused." (*Ibid.*)  The court concluded that, "[b]ecause the court did not 'demonstrate a rational basis for its award' or 'ensure that the record is sufficient to permit meaningful review,' " the award of noneconomic damages to those three victims had to be reversed and the matter remanded for directions for the trial court to hold a restitution hearing.  (*Id.* at pp. 1183-1184, citing *Giordano, supra,* 42 Cal.4th at p. 664.)

Here, in contrast to *Valenti, supra,* 243 Cal.App.4th 1140, there was substantial evidence through mother's testimony presented at the restitution hearing that Diaz had sexually assaulted the minor, who suffered emotional damage as a result.  Additionally, unlike the victims in *Valenti*, the minor here was in counseling for the trauma experienced, and there was ample evidence that Diaz's molestation caused the minor to suffer flashbacks concerning the abuse, and trouble sleeping.  She was in therapy four times a week to deal with the problems caused by the abuse.  Further, she was having difficulty with school and, at age 11 at the time of the hearing, she

11

was still depressed, had feelings of isolation, was taking medications for her condition and was unable to develop childhood friendships. Moreover, contrary to the trial court's silence in *Valenti*, the court here explained the factors considered in making its determination, and it independently considered the facts of the case when calculating the $665,000 in noneconomic damages. As such, on the record before us, this award does not "shock the conscience" or suggest passion, prejudice or corruption. (See *Smith, supra,* 198 Cal.App.4th at p. 436; *People v. Lehman* (2016) 247 Cal.App.4th 795, 803.)

DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

12